IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MAURICE GERELL  BROUGHTON,⠀⠀⠀)
AIS 276164,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀CASE NO. 2:19-780-RAH-CSC
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
ANTHONY L. MURPHY,⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Defendant.⠀⠀⠀⠀⠀⠀⠀)

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.⠀⠀Introduction

⠀⠀⠀⠀Pro se Plaintiff Maurice Broughton, an indigent state inmate, files this 42 U.S.C. § 1983 civil rights complaint seeking relief for certain claimed violations of his federally protected rights. This action is filed against Correctional Officer Anthony Murphy who is or was employed by the  Alabama Department of Corrections at the time of the event made the subject of this case.[1] Broughton files suit against Murphy for subjecting him to excessive force at the Elmore Correctional Facility on August 3, 2019, and delaying his receipt of medical care for his resulting injuries. Doc. 8. For relief, Broughton seeks $1 million in damages (Doc. 27), his release from custody, and removal from his prison file any disciplinary issued to him by Murphy (Doc. 12 at 1–2).[2] Broughton also requests that

---

[1] This case is before the Court on Broughton's Amended Complaint. Doc. 8.

[2] Broughton's requests for release from custody and expungement of a disciplinary are not appropriate remedies in a 42 U.S.C. § 1983 action *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Preiser v. Rodriquez,* 411 U.S. 475, 500 (1973); *Heck v. Humphrey*, 512 U.S. 477 (1994).

he be allowed to press criminal charges against Murphy, that the Elmore Correctional Facility be closed, and that Murphy be barred from employment by the State of Alabama and fired from the Alabama Department of Corrections.[3] Doc. 12 at 2.

Murphy filed an Answer and Special Report (Doc. 19) which includes relevant evidentiary materials in support, including affidavits, prison documents, photographs, and medical records addressing the claims presented by Broughton. In his Special Report Murphy denies he violated Broughton's constitutional rights.

After reviewing the Special Report the Court issued an Order on May 1, 2020, requiring Broughton to respond to the reports with affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 20. This Order specifically cautioned that, unless a party presented sufficient legal cause, the Court would treat the Special Report as a motion for summary judgment, and rule on the motion after considering any response. *Id.* at 2–3. Broughton filed responses to the Special Report. Docs. 21, 32. Pursuant to the May 1 Order, the Court now treats Murphy's Special Report as a motion for summary judgment and concludes it is due to be granted.

## II.    Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of

---

[3] Broughton's request to bring criminal charges against Murphy is unavailing. A "private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another." *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Nelson v. Skehan*, 386 F. App'x 783, 786 (10th Cir. 2010) (holding that plaintiff has no constitutional right to have a defendant prosecuted).

law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id*. at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th

Cir. 1990). Thus, a plaintiff's pro se status alone does not mandate this Court disregard elementary principles of production and proof in a civil case.

## III.   Background

Broughton alleges that Murphy attacked him on August 3, 2019, at approximately 11:15 a.m., sprayed him with mace, and thereafter denied him immediate medical attention for his resulting injuries. Doc. 8 at 3.  The Court considers Broughton's allegations to assert claims of excessive force and deliberate indifference to his medical needs in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Broughton signed his Complaint under penalty of perjury (Doc. 8 at 4) and his affidavits in response to Defendant's Special Report are verified and sworn to under penalty of perjury (Doc. 21 at 23–24; Doc. 32 at 16). Broughton also submitted the affidavit of inmate DonDre Harris which is verified and sworn to under penalty of perjury. Doc. 21 at 21–22. Therefore, the Court will treat the Complaint and affidavits as evidence when ruling on Murphy's motion for summary judgment. *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019) (citation omitted). Broughton's opposition (Doc. 21 at 1–11), however, is unsworn. Therefore, the Court does not treat its factual assertions as evidence on summary judgment. *See id*.; *Roy v. Ivy*, 53 F.4th 1338 (11th Cir. 2022) (*citing Carr v. Tatangelo*, 338 F.3d 1259, 1273 n.26 (11th Cir. 2003), *as amended*, (Sept. 29, 2003) (noting that "[u]nsworn statements may not be considered by a district court in evaluating a motion for summary judgment."); *see also Mosley v. MeriStar Mgmt. Co., LLC*, 137 F. App'x 248, 252 n.3 (11th Cir. 2005) (noting that "the complaint was unverified and therefore could not be considered evidence supporting [plaintiff's claim" on summary judgment).

4

Broughton's claims stem from the following facts, viewed in the light most favorable to him. The institutional incident report regarding the challenged event shows that on August 3, 2019, Murphy was assigned as the B1-Dorm Officer. Doc. 19-8 at 1. According to the incident report:

> At approximately 11:55 a.m., Officer Murphy just stepped inside of the cubicle when Michael Castillo (Bl-28A) W/194345 ran and knocked on the door and stated help me I'm being attacked. Officer Murphy ran out of the cubicle and observed inmate Maurice Broughton (Bl- 24A) B/276164 grab and slam inmate Castillo to the floor and kick him in his facial area. Officer Murphy gave inmate Broughton a direct order to stop. Inmate Broughton complied. Inmate Chris Caldwell (Bl-19A) B/260823 ran up and kicked inmate Castillo in the head. Officer Murphy gave inmate Caldwell a direct order to stop. Inmate Caldwell complied and turned around took off his shirt and walked toward Officer Murphy in an aggressive manner. Officer Murphy gave inmate Caldwell a direct order to stop, turn around and place his hands behind his back. Inmate Caldwell refuse to comply. Officer Murphy unholstered his chemical agent and applied a burst of chemical agent to inmate Caldwell's facial area. Inmate Broughton was standing beside inmate Caldwell also accidently received some of the spray to his facial area. At approximately 11:56 a.m., Officer Murphy informed Correctional Lieutenant Terrence Calvin of the incident. Inmates Caldwell and Broughton went to the designated decontamination area. Inmates Broughton and Caldwell were handcuffed to the rear and escorted to the Shift Office. Inmate Castillo admitted he owed both inmates money. Inmates Caldwell and Broughton denied inmate Castillo owing them money. Lieutenant Calvin questioned inmates Broughton and Caldwell. Inmate Broughton stated that Officer Murphy was the aggressor by spraying his mace and up his stick (Baton) then start following him. Inmate Caldwell stated that Officer Murphy was very aggressive by spraying me with his mace. Officer Murphy and inmates Broughton and Caldwell submitted written statements (see attached).[4] Lieutenant Calvin verbally reprimanded inmates Caldwell, Broughton and Castillo regarding their negative behavior and advised them disciplinary action would be initiated for Assault on another inmate and Disorderly Conduct. Lieutenant Calvin took pictures (see attached). There were no

---

[4] Murphy's evidentiary materials do not contain these written statements by Broughton and inmate Caldwell. A written statement by inmate Castillo is included with Murphy's evidence. *See* Docs. 19-10, 19-12. Included with Broughton's evidence is his inmate written statement dated August 3, 2019. Doc. 32 at 15.

injuries to inmates Castillo, Broughton or Caldwell. Inmates Caldwell, Broughton and Castillo signed an Inmate Living Agreement inmate Castillo also signed a Release of L[i]ability (see attached). All inmates were transported to Staton's Health Care Unit for a medical assessment conducted by Wexford Nurse Christine Savage.

*Id.*

Murphy submitted three separate affidavits. In his in initial affidavit, Murphy states:

On August 3, 20 I9, I heard Inmate Michael Castillo #194345 screaming for help. As I enter BI dorm, I observe Inmate Broughton and inmate Christopher Caldwell assaulting inmate Castillo. I gave a command[] for both inmate to stop. The inmate's refused to comply and became aggressive toward me. I then administered one burst of Sabra Red to each of the inmate's facial area. I then, placed each inmate [in] handcuff and took them to be decontaminated.

Doc. 19-1 at 2. Murphy testifies in his second affidavit that on August 3, 2019, as he was standing inside B1 Dorm cubicle, he observed Broughton and inmate Caldwell chasing inmate Castillo who was screaming for help. Doc. 19-2 at 1. Upon exiting the cubicle he saw Broughton and inmate Caldwell assaulting inmate Castillo and ordered them to stop. The inmates did not comply and approached Murphy aggressively. *Id.* In response, Murphy testifies to administering a burst of Sabre Red spray in Broughton and inmate Caldwell's facial area. *Id.* After being maced, inmate Caldwell was handcuffed but Murphy states Broughton refused to be handcuffed. *Id.* Murphy then deployed a second shot of Sabre Red to Broughton's facial area. *Id*. Back up assistance arrived at which time Broughton was handcuffed and both he and inmate Caldwell were escorted for decontamination. *Id*. Murphy testifies that the inmate statement given by inmate Castillo regarding the incident

gives a "full account of how and why things unfold on August 3 2019.[5] *Id.* In his third affidavit, Murphy testifies that he did not order Broughton to be placed on the floor at any time during the incident in question. Doc. 19-3 at 1. Rather, Murphy states Broughton was handcuffed in a standing position and remained standing during the entire incident. *Id.* Murphy further affirms that at no time did make threats to kill Broughton. *Id.*

Broughton's medical records show he was evaluated at 3:30 p.m. on the same day Murphy attacked and pepper sprayed him—August 3, 2019. Doc. 19-9 at 1. In the inmate statement section of Broughton's body chart, medical staff wrote "I got sprayed [with] pepper spray earlier today. Ambulatory into HCU [with] stead gait." *Id.* Broughton's medical records reflect he had direct exposure to pepper spray. *Id.* at 2. Medical personnel documented that both Broughton's tegaderm dressing on his abdominal surgical site and his abdomen were intact. *Id.* at 1–2. No swelling or drainage to Broughton's surgical site was observed, his skin was warm and dry to the touch, his respiration was normal, and he had full range of motion. *Id.* Medical staff noted Broughton complained of stomach cramps due to being pepper sprayed but denied any pain. *Id.* at 1.

On August 8, 2019, a notation in Broughton's medical records shows he needed a follow up with the prison doctor in 2–5 days to be evaluated for post-op umbilical hernia repair and possible re-herniation. Doc. 19-9 at 4. Broughton submitted a sick call request

---

[5] Inmate Castillo's statement referenced by Murphy does not identify his alleged attackers by name. Doc. 19-12 at 1. Rather, inmate Castillo's statement describes a situation in which he was late paying a debt he owed another inmate for drugs and, as pertinent here, two inmates "chased him to the front where [he] was kicked and beaten till Officer Murphy was forced to mace them." *Id.* Based on the evidence of record, including the living agreement signed by Broughton and inmates Caldwell and Castillo on August 3, 2019 (Doc. 19-6), the Court assumes, without deciding, that inmate Caldwell was referring to Broughton and inmate Caldwell in his written statement.

on August 12, 2019, requesting his teeth be cleaned and that he be provided with a wellness diet card because of his hernia surgery. *Id.*  at 5. On August 26, 2019, Broughton was transferred from the Elmore Correctional Facility to the Kilby Correctional Facility for a follow-up appointment with the provider who performed his hernia surgery. *Id.* at 8. On arrival at Kilby, prison officials observed that Broughton was in no distress and stated he was "doing ok." *Id.*

## IV.   Discussion

### A.     Sovereign Immunity

Broughton seeks money damages on his claims for relief. In response, Murphy asserts Broughton's suit against him, to the extent he is sued in his official capacity, is barred by the Eleventh Amendment immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). The Eleventh Circuit has held:

> [T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (quotation marks and citation omitted). Thus, a state official may not be sued in his official capacity unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 59 (1996). "Alabama has not waived its

Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (*citing Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)); Ala. Const. Art. I, § 14. Thus, to the extent Broughton sues Murphy in his official capacity, as a state actor, he is entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages. *Selensky*, 619 F. App'x at 849; *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

**B.     Qualified Immunity**

Regarding Broughton's claims against Murphy in his individual capacity, Murphy argues that Broughton's allegations fail to state a claim and that he is entitled to qualified immunity. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does  not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citation omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Murphy was acting within the course and scope of his discretionary authority when the challenged incident occurred. Broughton must, therefore, allege facts that, when read in a light most favorable to him,

show that Murphy is not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, Broughton must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. . . . In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and quotation marks omitted) (alteration in original). "Clearly established law" means (1) "a materially similar case has already been decided;" (2) "a broader, clearly established principle that should control the novel facts of the situation;" or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (citations omitted). The controlling authority is from "the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state." *Id.* at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted). The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210 (citations and quotation marks omitted). "Exact factual identity with the previously

decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted). If a plaintiff cannot establish both elements to satisfy his burden, the defendant is entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42).

If the alleged constitutional violation is an excessive force claim, the excessive force "must have been sadistically and maliciously applied for the very purpose of causing harm," and it is "clearly established that all infliction of excessive force on a prisoner sadistically and maliciously for the very purpose of causing harm and which does cause harm violates the Cruel and Unusual Punishment Clause." *Johnson v. Breeden*, 280 F.3d 1308, 1321–22 (11th Cir. 2002), *overruled on other grounds by Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010). Therefore, "where this type of constitutional violation is established there is no room for qualified immunity. It is not just that this constitutional tort involves a subjective element, it is that the subjective element required to establish it is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution. . . ." *Id.*; *Bowden v. Stokely*, 576 F. App'x 951, 954–955 (11th Cir. 2014) Accordingly, while "there is no per se rule barring qualified immunity in Eighth Amendment cases, where the plaintiff has sufficiently alleged or shown a material dispute of fact as to an excessive force claim, summary judgment based on qualified immunity is not appropriate." *Id.* at 955 (citing *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002)). Taking them as true for consideration of the summary

judgment motion, the Court must consider whether Broughton's allegations against Murphy set forth a violation of his Eighth Amendment rights.

### C.    Excessive Force

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The standard applied to an Eighth Case Amendment excessive force claim contains both subjective and objective components. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id*. (internal quotations omitted).

Regarding the objective component, a plaintiff must show "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. 1 (quotation marks omitted). In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id*. at 4. "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 38.

> Under the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and

> sadistically to cause harm, a variety of factors are considered including: "the
> need for the application of force, the relationship between that need and the
> amount of force used, the threat reasonably perceived by the responsible
> officials, and any efforts made to temper the severity of a forceful response."
> *Hudson*, 503 U.S. at 7–8, 112 S.Ct. 995; *see also Whitley*, 475 U.S. at 321,
> 106 S.Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From
> consideration of such factors, "inferences may be drawn as to whether the
> use of force could plausibly have been thought necessary, or instead evinced
> such wantonness with respect to the unjustified infliction of harm as is
> tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321,
> 106 S.Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich*, 280 F.3d at 1300-1301. "When prison officials maliciously and sadistically use force to cause harm, . . . contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Wilkins*, 559 U.S. at 37 (quotation marks and citation omitted). Thus, in an excessive force case like this one, "the core judicial inquiry is not whether a certain quantum of injury was sustained, but rather whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Bowden*, 576 F. App'x at 953 (internal quotations and citation omitted).

Broughton's testimony describes the August 3, 2019, incident as an unprovoked attack when Murphy assaulted and pepper sprayed him while threatening to kill him. Doc. 8 at 3. After being maced, Broughton alleges Murphy ordered him to lie face down on the ground despite knowing he recently had major hernia surgery. *Id.* Broughton elaborates on the August 3, 2019, incident in his affidavit in opposition to Murphy's evidence stating inmate Castillo attacked him and that several other inmates helped pull inmate Castillo off his leg. Doc. 21 at 23. Broughton maintains he informed Murphy that inmate Castillo had

not been assaulted, he was high on ICE and had been up for several days, and denies that Murphy ordered him to stop assaulting inmate Castillo. *Id.* After being helped from the front of B-Dorm to his living area, Broughton states Murphy followed him, "yelling and cursing with his stick and mace out, saying he 'Officer Murphy' was going to kill inmate Broughton with his Bitch Ass." *Id.* When Broughton showed Murphy his stomach with its visible bandages, Broughton states Murphy sprayed him directly in the face with Sabre Red spray and ordered him to lay on the ground and put his hands behind his back.[6] *Id.*  at 23–24. Submitted in support of Broughton's evidentiary materials is his Inmate Written Statement form dated August 3, 2019. Doc. 32 at 15. According to the statement, around 11:55 a.m. Murphy assaulted Broughton and Murphy was shown to be "the aggester [sic] during incident; a lot of inmates stood between me and Officer Mur[phy] and also tried to defuse[] this situation, but Officer Mur[phy] follow me from the front of dorm to my living area then spray me with his mace, and then ups his stick."[7] *Id.* at 24.

Alleging that he told Murphy and other correctional officers that he needed serious medical attention after being ordered to lie on his stomach, Broughton states the response to his request was that if he was going to die he would just have to die because their shift ended at 2:00 p.m. Doc. 21 at 24. Broughton further states that Murphy did not inform his supervisor that Broughton needed medical attention, Murphy's shift ended at 2:00 p.m.,

---

[6] Broughton submits a sworn affidavit from inmate DonDre Harris who witnessed the August 3, 2019 incident. Doc. 21 at 21, 22 (Exhibit C). Inmate's Harris' testimony essentially repeats the testimony in Broughton's affidavit (Doc. 21 at 23–24 – Exhibit D).

[7] Broughton submitted a sworn affidavit in which he states he misspelled Officer Murphy's last name in his August 3, 2019, inmate written statement (Doc. 32 at 15) and stating Defendant's proper name is "Anthony L. Murphy." Doc. 32 at 16.

and Broughton was not taken to the health care unit until 3:30 p.m.—three hours after the incident occurred. *Id.*

Murphy denies violating Broughton's constitutional rights regarding the incident in question and denies attacking Broughton or threatening to kill him. He maintains that he pepper sprayed Broughton twice—once because Broughton refused his order to stop assaulting inmate Castillo and became aggressive and again when Broughton refused Murphy's order to be handcuffed. Docs. 19-1, 19-2. Murphy also argues that assuming he used force on Broughton other than macing him, Broughton's injuries were *de minimis* and no more force than necessary was used to maintain order and restore discipline. *See* Doc. 19.

Even though Murphy disputes the version of events presented by Broughton, this Court is required at this stage of the proceedings to view the facts in the light most favorable to Broughton and draw all reasonable inferences from those facts in his favor. *Bradley v. Franklin Collection Serv. Inc.*, 739 F.3d 606, 608 (11th Cir. 2014); *Anderson*, 477 U.S. at 255 (explaining that all justifiable inferences are to be drawn in favor of the party opposing summary judgment). Crediting Broughton's version, Murphy undertook actions against him by following him to his living area while threatening to kill him, proceeded to pepper spray him for no reason, and then ordered him to lie face down on the ground to be handcuffed despite knowing Broughton recently had surgery on his abdomen.[8] Further,

---

[8] The law is settled that derogatory, demeaning, profane, threatening, or abusive comments made by an officer to an inmate, no matter how repugnant or unprofessional, do not, without more, rise to the level of a constitutional violation. *See Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x. 862, 866 (11th Cir. 2008) (holding that inmate's claim of "verbal abuse alone is insufficient to state a constitutional claim").

Murphy's own testimony and the institutional incident report on which he also relies, contain inconsistencies regarding the August 3, 2019, event. According to the institutional incident report, Murphy was in the cubicle of B-Dorm when inmate Castillo knocked on the door saying he was being attacked. Doc. 19-8 at 1. In his original affidavit Murphy testifies that he was entering B-Dorm when he observed Broughton and another inmate assaulting inmate Castillo. Doc. 19-1 at 1. In his second affidavit, Murphy testifies that he was standing inside the cubicle when he saw Broughton and inmate Caldwell chasing inmate Castillo in the dorm.[9] Doc. 19-2 at 1. Next, the institutional incident report indicates that Murphy's application of pepper spray to Broughton was accidental because Broughton was standing next to inmate Caldwell when Murphy sprayed inmate Caldwell who was walking aggressively toward the Murphy and refusing his orders to stop, turn around, and place his hands behind his back. Doc. 19-8 at 1. Murphy's affidavits submitted in support of his dispositive motion, however, indicate he directly sprayed Broughton twice with pepper spray; once for failing to stop assaulting inmate Castillo and again for refusing to be handcuffed. *See* Docs. 19-1, 19-2, 19-3. Finally, the Court notes that although the institutional reports show involvement of a primary incident—an inmate-on-inmate assault—and a secondary incident—disorderly conduct—Broughton only received a disciplinary for assaulting an inmate. Docs. 19-5—19-8.

---

Nonetheless, the Court notes Broughton's assertion that Murphy was verbally abusive, threatened to kill him, and forced him to lie on his stomach despite his recent abdominal surgery alludes to a broader context of animosity between officer and inmate at the time of the incident suggestive of a malicious or sadistic intent in the application of force.

[9] While a determination on the excessive force issue does not turn on Defendant's location in the dorm, the Court considers these inconsistencies in evaluating the evidentiary submissions.

16

Notwithstanding the foregoing, the Court is cognizant of the fact that Broughton does not describe any injuries he sustained from the challenged incident and essentially indicates he needed medical attention for being required to lay face down on his stomach despite his recent abdominal surgery. Broughton's body chart reflects he only told medical personnel he had been pepper sprayed and does not otherwise indicate he had any injuries. Docs. 19-1, 19-2. There is no dispute that Broughton received decontamination for exposure to a chemical agent after the incident. Docs. 19-1, 19-2, 19-9 at 1, 2.

Viewing the facts in the light most favorable to Broughton, the Court concludes Murphy is not entitled to qualified immunity as Broughton has alleged facts sufficient to survive his motion for summary judgment regarding the excessive force claim. *Skrtich*, 280 F.3d at 1301. Although Murphy's affidavit testimony challenges Broughton's version of events, claims he did not physically attack Broughton, states he only used that amount of force necessary to maintain order and restore discipline, and maintains Broughton suffered no more than *de minimis* injuries, the ultimate resolution of this issue depends on a credibility determination properly decided by the trier of fact. Specifically, disputed issues of material fact remain as to the need for the use of force, the nature and amount of force used, and whether Murphy acted "maliciously and sadistically to cause harm." Consequently, the motion for summary judgment is due to be denied on Broughton's excessive force claim against Defendant Murphy in his individual capacity.

### D.    Medical Claim

Broughton alleges that his Eighth Amendment right to be free from cruel and unusual punishment was abridged when he did not receive proper medical care after

Murphy assaulted him. Doc. 8 at 3. In support of this claim, Broughton states he informed Murphy he needed serious medical attention following the August 3, 2019, incident, but complains he did not receive medical attention until several hours later. Doc. 8 at 3; Doc. 21 at 24. The undisputed evidence reflects Broughton arrived at Staton Correctional Facility's health care unit at 3:19 p.m. and a nurse examined him and completed a body chart by 3:30 p.m. Doc. 19-9 at 1.

The Supreme Court determined in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), that "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. "To prevail on a deliberate indifference to serious medical need claim, [a plaintiff] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009).

Deliberate indifference requires that a defendant have subjective knowledge of the risk of harm and consciously disregard that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety ...."). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Farrow v. West*, 320 F.3d 1235, 1246 (11th Cir. 2003) (quotation marks and citation omitted) (holding that "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate").

18

"Deliberate indifference" also entails more than mere negligence. *Estelle*, 429 U.S. at 106; *Farmer*, 511 U.S. at 835. A defendant must have the subjective intent to cause harm. Also, "[d]elay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citations omitted). "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Id*. A plaintiff who complains of delay in medical treatment has the burden of establishing that he suffered a significant effect from the delay. *Id.* at 1188.

Here, Broughton presents no evidence sufficient to create a genuine issue of disputed fact regarding his claim that Murphy acted with deliberate indifference to his medical needs. There is no dispute that Broughton had surgery on July 30 2019, to remove a hernia on his stomach. Doc. 19-9 at 4. Although Broughton contends he needed immediate medical attention after Murphy had him lie on his stomach following their interaction on August 3, 2019, he does not actually allege that he sustained any injuries from doing so or explain why immediate medical care was necessary. Furthermore, when non-defendant Nurse Savage conducted a body chart exam of Broughton on August 3, 2019, he informed her that he had been exposed to a chemical agent but did not otherwise complain of or indicate that he sustained any other injuries. Doc. 19-9 at 1, 2. Broughton's undisputed medical records made at the time of the incident show that his surgical site,

including the tegaderm dressing covering the wound, was intact, no injuries were noted, and Broughton denied having any pain. *Id.* There is no evidence that Broughton sought further medical care regarding his hernia operation other than requesting a wellness diet card on August 12, 2019, because of his recent surgery. Doc. 19-9 at 5.

Here, the Court finds no evidence that supports Broughton's claim that Murphy violated his Eighth Amendment right to adequate medical care. First, Broughton does not name as a defendant any prison personnel who provided medical treatment to him on August 3, 2019. Next, there is no evidence Murphy was responsible for determining the level of necessary medical care for Broughton. Finally, Broughton has failed to show that Murphy was subjectively aware of a substantial risk of serious harm to him. Indeed, Broughton has failed to show that a substantial risk of serious harm even existed. While Broughton explains that, in general, he needed serious medical attention because Murphy knew he recently had surgery on his stomach yet insinuates the guard intentionally delayed his provision of medical care, he does not demonstrate how that general risk, in this specific situation, was substantial or that Murphy disregarded any known serious risk to his health regarding his ability to obtain necessary medical care. *Taylor*, 221 F.3 at 1258; *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (stating that for liability to attach, the official must know of and then disregard an excessive risk of harm to the inmate); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998); *Farmer*, 511 U.S. at 838; *see also See Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984) (explaining that conclusory do not provide sufficient evidence to oppose a motion for summary judgment). Therefore,

Murphy is entitled to qualified immunity on Broughton's claim that he was denied adequate medical care, and summary judgment is due to be granted in his favor on this claim.

**V.    Conclusion**

Accordingly, the undersigned Magistrate Judge RECOMMENDS the following:

1.    Defendant's Motion for Summary Judgment (Doc. 19) on Plaintiff's claims for monetary damages in his official capacity be GRANTED and these claims be DISMISSED with prejudice.

2.    Defendant's Motion for Summary Judgment on Plaintiff's claim of excessive force in his individual capacity be DENIED.

3.    Defendant's Motion for Summary Judgment on Plaintiff's claim of deliberate indifference be GRANTED and this claim be DISMISSED with prejudice.

4.    The case be referred to a Magistrate Judge of this Court for mediation.

5.    This case be set for a bench trial on Plaintiff's excessive force claim against Defendant.

It is ORDERED that by **February 8, 2023**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made.  Frivolous, conclusive or general objections will not be considered by the Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive

the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. 11TH Cir. R. 3–1. *See Resol. Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993);  *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 25th day of January 2023.


/s/  Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE